UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| SONYA PIPKINS,<br><br>    Plaintiff,<br><br>v.<br><br>IMASEN BUCYRUS TECHNOLOGY, INC.,<br><br>    Defendant. | Case No. 1:15-cv-00111<br><br>Chief Judge Crenshaw<br>Magistrate Judge Newbern |

To: The Honorable Waverly D. Crenshaw, Jr., Chief Judge

## **REPORT AND RECOMMENDATION**

By Order entered February 6, 2017, the District Court referred this action to the Magistrate Judge under 28 U.S.C. § 636(b)(1) for report and recommendation on all dispositive motions. (Doc. No. 21.) Now pending is the unopposed Motion for Summary Judgment (Doc. No. 24) of Defendant Imasen Bucyrus Technology, Inc. (IB Tech). For the reasons stated below, the undersigned RECOMMENDS that IB Tech's Motion for Summary Judgment be GRANTED.

**I.**     **Factual Background**

    **A.**     **Procedural History**

Pipkins filed a civil action in the Chancery Court of Maury County on November 4, 2015, which was removed to this Court on December 4, 2015. (Doc. Nos. 1, 1-1.) Pipkins's Complaint alleges that she is "a female employee of Defendant" who "is qualified for the positions of 'Coordinator' and 'Supervisor' at Defendant's Mt. Pleasant production facility but has repeatedly been passed over for promotions in favor of equally or less qualified males." (Doc. No. 1-1, PageID# 8–9, ¶¶ 6, 13.) Pipkins also states that, "[u]pon information and belief, there are no female

'Coordinators' or 'Supervisor[s]' on any of [IB Tech's] three shifts." (*Id.* at PageID# 8, ¶ 7.) Pipkins alleges that she "had been serving as 'Acting Coordinator' on the [third] shift but was never given a pay raise or offered an opportunity to apply for [an available] 'Supervisor' permanent position" on the third shift, which was instead "given to a male without even posting the position or considering Plaintiff" despite a "normal policy at IB Tech to post [such] positions internally." (*Id.* at PageID# 8, ¶¶ 8–9.) According to Pipkins, this "conduct constitutes gender discrimination in violation of the Tennessee Human Rights Act located at" Tennessee Code Annotated § 4-21-401, *et seq.* (*Id.* at PageID# 9, ¶ 12.)

On November 22, 2016 Pipkins's counsel filed a motion to withdraw, which the Court granted on December 1, 2016. (Doc. Nos. 13, 16.) At that time, the Court gave Pipkins sixty days to obtain new counsel and noted that "[i]f new counsel has not entered an appearance on behalf of Plaintiff by that date, Plaintiff shall be deemed to be proceeding in this action *pro se*." (Doc. No. 16, PageID# 87.) No counsel entered an appearance on Pipkins's behalf and the Court noted Pipkins's pro se status. (Doc. No. 19.)

On February 10, 2017, IB Tech filed the instant Motion for Summary Judgment (Doc. No. 24), accompanied by a Memorandum in Support (Doc. No. 25); the Deposition of Pipkins with cited exhibits (Doc. No. 27-1); the Declaration of Wendy Bruer, IB Tech's human resources manager (Doc. No. 27-2); IB Tech's "internal manpower reports for May 23, 2014 through August 28, 2015" listing each employee's title (Doc. No. 27-3); the Declaration of William Wade, IB Tech's Assistant Vice President (Doc. No. 27-4); and a Statement of Material Undisputed Facts (Doc. No. 26). After a March 1, 2017 case management conference at which Pipkins appeared pro se, the undersigned ordered Pipkins to respond to IB Tech's pending Motion for Summary Judgment (Doc. No. 24) on or before April 17, 2017. (Doc. No. 30, PageID# 312.) Pipkins has not

responded to IB Tech's motion or statement of undisputed material facts, nor has she filed her own statement. The factual history below is taken from IB Tech's unopposed Statement of Undisputed Material Facts (Doc. No. 26) and the exhibits filed in support of its motion for summary judgment (Doc. No. 27).

### B. Factual History

Plaintiff Sonya Pipkins began working at IB Tech's Mount Pleasant, Tennessee production facility on April 23, 2012. (Doc. No. 27-1, PageID# 124; Doc. No. 26, PageID# 109, ¶ 2.) She worked on the third shift, initially in the Quality Department, and after one or two months became a quality technician. (Doc. No. 27-1, PageID# 125–26.) Pipkins testified that Michael Tolliver, IB Tech's quality manager at the time, made her acting coordinator for the third shift in that department from June 2014 through August 2015. (*Id.* at PageID# 138; Doc. No. 26, PageID# 115, ¶¶ 30–31.)

Pipkins applied for two promotions that she did not receive, which are the basis of this action. In 2012, roughly a month after she began working at IB Tech, Pipkins applied for a production team leader position on the second shift. (Doc. No. 27-1, PageID# 127–28.) Brian McKinnon, who had previously been a production technician, was promoted to that position. (*Id.* at PageID# 128, 131.) Pipkins testified that she lacks personal knowledge of McKinnon's qualifications for the team leader position. (*Id.* at PageID# 132.)

In February 2015, Pipkins applied for a quality coordinator position on the third shift. (*Id.* at PageID# 132.) IB Tech selected Mike Mercer for this position. (*Id.*) Pipkins believed she was more qualified for this position than Mercer because she had greater experience in quality control. (*Id.* at PageID# 137.) She acknowledged, however, that Mercer had prior experience supervising employees as a team lead at IB Tech, experience that Pipkins lacked. (*Id.*)

During Pipkins's tenure, IB Tech disciplined her twice for attendance issues and also issued two written warnings related to her quality control responsibilities. (*Id.* at PageID# 133–35.) On November 19, 2012, Pipkins received a "[v]erbal [w]ritten" warning because "even though [she] signed off on [a dock] audit during 3rd shift, it[ was] obvious the audit was not performed by her." (*Id.* at PageID# 156.) On or about October 28, 2014, IB Tech issued Pipkins a written warning for "caus[ing] confusion/interruption with production associates on the [production] line . . . including refusing to take issues off-line" and "bypassing some key quality checks" by "removing hold tags without checking" and "checking parts 'in the lab' rather than on the floor." (*Id.* at PageID# 152.) Pipkins characterized these allegations as false. (*Id.* at PageID# 133–34, 152.)

On June 5, 2015 IB Tech issued Pipkins a written warning based on her attendance. (*Id.* at PageID# 135–36.) On August 14, 2015, IB Tech gave Pipkins a final written warning, stating that "[s]ignificant improvements must be made in [her] attendance" and that "continued absences may result in disciplinary actions," with the next disciplinary action being termination. (*Id.* at PageID# 148, 153.) Pipkins voluntarily left her employment with IB Tech on December 18, 2015. (*Id.* at PageID# 144.)

## II.     Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, the moving party must prove the absence of a genuine issue of material fact as to any essential element of the opposing party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 847 (6th Cir. 2016). In determining whether the moving party has met its burden, a court must view the factual evidence and draw all reasonable inferences in the light most

favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stiles*, 819 F.3d at 848. A court must not weigh the evidence and determine the truth of the matters asserted but instead must "determine whether there is a genuine issue for trial." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to judgment as a matter of law. *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (citation omitted). To preclude summary judgment, the nonmoving party must go beyond the pleadings and present specific facts demonstrating the existence of a genuine issue for trial. *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) (citations omitted). "A mere scintilla of evidence by the nonmoving party is insufficient to defeat summary judgment; 'there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *St. Clair Marine Salvage, Inc. v. Bulgarelli*, 796 F.3d 569, 574 n.2 (6th Cir. 2015) (alteration in original) (quoting *Anderson,* 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment may be granted. *Anderson,* 477 U.S. at 249–52.

## III. Analysis

This Court's Local Rules 7.01(b) and 56.01(c) and (g) govern responses to motions generally and statements of material facts filed with motions for summary judgment, respectively. Local Rule 7.01(b) states, in pertinent part, that "[f]ailure to file a timely response [to a motion] shall indicate that there is no opposition to the motion." Regarding responses to statements of

material facts in the summary judgment context, Local Rule 56.01(g) provides that "[f]ailure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for the purposes of summary judgment." IB Tech filed its motion for summary judgment and accompanying statement of material facts on February 10, 2017. Pipkins did not respond to either. However, "[a] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded," *Evans v. Plummer*, No. 16-3826, 2017 WL 1400495, at *9 (6th Cir. Apr. 19, 2017) (quoting *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). The court must instead examine the motion to determine whether the movant has discharged its burden of demonstrating the absence of a genuine issue of material fact. *Id.*

Pipkins brought this action alleging gender discrimination under the Tennessee Human Rights Act (THRA). (Doc. No. 1-1, PageID# 9, ¶ 12.) Claims under the THRA are analyzed according to the standards of Title VII. *Hillman v. Shelby Cty.*, 515 F. App'x 365, 369 (6th Cir. 2013) (quoting *Dennis v. White Way Cleaners, L.P.*, 119 S.W. 3d 688, 693 (Tenn. Ct. App. 2003)); *Armstrong v. Tenn. Educ. Lottery Corp.*, 219 F. Supp. 3d 708, 714 n.1 (M.D. Tenn. 2016). To establish a prima facie case of gender discrimination on the basis of a failure to promote, a plaintiff must show that:

> (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.

*Culver v. CCL Label, Inc.*, 455 F. App'x 625, 627–28 (6th Cir. 2012) (quoting *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005)). If a plaintiff establishes a prima facie case of discrimination, the court then applies the burden-shifting analysis laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which the burden shifts first to the defendant to articulate a non-discriminatory reason for the adverse employment action, then back to the

plaintiff to show, by a preponderance of the evidence, that the proffered reason is mere pretext for retaliatory motive. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674–75 (6th Cir. 2013), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013).

It is uncontested that Pipkins is female, was not promoted to the positions she sought, and that men were instead hired for those positions. These facts establish the first, third, and fourth elements of her prima facie case. *See DiCarlo v. Potter*, 358 F.3d 408, 420–21 (6th Cir. 2004), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). Thus, the remaining analysis will focus, first, on the timeliness of Pipkins's claim arising from her 2012 application for a promotion and second, whether she was a qualified applicant, proceeding as necessary to IB Tech's articulated non-discriminatory reason for not promoting Pipkins.

A. **The 2012 Production Team Leader Position**

Roughly one month after IB Tech hired Pipkins in 2012, she applied for a production team leader position on the second shift. Brian McKinnon, previously a production technician, received the promotion. (Doc. No. 27-1, PageID# 127–28, 131.) IB Tech addresses this claim in a footnote to its motion, noting that Pipkins "does not specifically mention her application for the position in her Complaint" and that, "to the extent she claims that IB Tech's failure to promote her to that position was discriminatory, such claim is barred by the Tennessee Human Rights Act's one-year statute of limitations." (Doc. No. 25, PageID# 101, n.1.)

Tennessee law provides that a civil cause of action under the THRA "shall be filed . . . within one (1) year after the alleged discriminatory practice ceases." Tenn. Code Ann. § 4-21-311(d). Pipkins filed suit in state court on November 4, 2015. (Doc. Nos. 1, 1-1.) Pipkins conceded in her deposition that IB Tech failed to promote her to the production team leader position more

than a year before she filed her lawsuit. (Doc. No. 27-1, PageID# 127.) Her claim arising out of the 2012 application is therefore untimely on its face.

While Pipkins does not squarely invoke the continuing violation doctrine in her Complaint, she does include allegations that could be so construed.[1] To the extent that Pipkins does intend to assert such a theory, her claim cannot survive summary judgment. The Supreme Court has characterized claims arising from "termination, failure to promote, denial of transfer, or refusal to hire" as discrete acts that are unlikely candidates for the application of the continuing violation doctrine. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002); *see also Austion v. City of Clarksville*, 244 F. App'x 639, 648 (6th Cir. 2007) (characterizing a demotion as a discrete act under the THRA and finding untimely a claim brought more than one year later). Moreover, even assuming that Pipkins's two denials of promotion could serve as part of a larger pattern of discrimination, she has failed to go beyond the pleadings and present specific facts demonstrating the existence of a genuine issue for trial. *Shreve*, 743 F.3d at 132. Two denials of promotion three years apart do not establish a continuing violation. IB Tech is entitled to judgment as a matter of law on Pipkins's untimely claim based on the 2012 production team leader position.

### B. The 2015 Quality Coordinator Position

In February 2015, Pipkins applied for a quality coordinator position. IB Tech selected Mike Mercer for this position in August 2015. (Doc. No. 27-1, PageID# 126, 132.) IB Tech argues that Pipkins was not qualified for this position because of a company policy providing that any

---

[1] For example, Pipkins alleges that "she is qualified for the positions of 'Coordinator' and 'Supervisor' at Defendant's Mt. Pleasant production facility but has repeatedly been passed over for promotions in favor of equally or less qualified males." (Doc. No. 1-1, PageID# 9, ¶ 13.) Pipkins's Complaint also states that "Defendant engages in a pattern and/or practice of favoring men over women for certain jobs within its production facility, including the positions of Coordinator and Supervisor." (*Id.* ¶ 14.)

employee seeking a job transfer or promotion is not eligible if he or she has received any disciplinary action within the previous six months. (Doc. No. 27-1, PageID# 135.) Pipkins admitted that the written warnings she received on October 28, 2014 and June 5, 2015 occurred within six months of the date she applied for the position and the date it was filled, respectively. (*Id.* at PageID# 135–36.)

"To establish that she is qualified for the position, a Title VII plaintiff need only show that she satisfied an employer's 'objective' qualifications." *Culver*, 455 F. App'x at 628 (quoting *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009)). Pipkins cannot meet this standard. She testified in her deposition that she was ineligible for the quality coordinator position at the time she applied based on the October 28, 2014 reprimand and IB Tech's policy regarding job transfers and disciplinary action. (Doc. No. 27-1, PageID# 135.) She also stated she was unaware of any IB Tech employee who successfully transferred to a new position after receiving discipline during the prior six months. (*Id.* at PageID# 136.) Finally, Pipkins testified that Jerry Kirk, a member of IB Tech management, told her she was ineligible for the position because of the written warning in her personnel file. (*Id.* at PageID# 142–43.) These undisputed facts entitle IB Tech to judgment as a matter of law on Pipkins's claim based on the 2015 quality coordinator opening.

Even assuming that Pipkins could establish a prima facie case of discrimination, IB Tech has rebutted it with a legitimate, non-discriminatory reason for not promoting her: her disciplinary history and lack of supervisory experience. (Doc. No. 25, PageID# 105–06.) Pipkins has introduced no evidence to show that reason is pretextual. *Jackson*, 814 F.3d at 779. Pipkins believes she was more qualified for this position than Mike Mercer because she had greater experience in quality control. (Doc. No. 27-1, PageID# 137.) She acknowledged, however, that Mercer had prior experience supervising employees as a team lead at IB Tech, experience Pipkins

lacked.[2] (*Id.*) In addition, IB Tech has offered evidence that Mercer "had not received any disciplinary action within six months of being selected to fill the [quality coordinator] position." (Doc. No. 27-2, PageID# 158, ¶ 5.) Pipkins's "subjective belief that [s]he was more qualified . . . is insufficient to demonstrate pretext." *Plumb v. Potter*, 212 F. App'x 472, 480 (6th Cir. 2007) (citing *Briggs v. Potter*, 463 F.3d 507, 516–17 (6th Cir. 2006)). Pipkins "has not produced evidence such that a reasonable jury could conclude that the [employer's] proffered reasons" for promoting Mercer constituted pretext. *Briggs*, 463 F.3d at 516–17. Accordingly, IB Tech is entitled to judgment as a matter of law on Pipkins's claim regarding the 2015 quality coordinator position.

---

[2] Pipkins testified in her deposition that she had served as acting coordinator on the third shift from June 2014 through August 2015. (Doc. No. 27-1, PageID# 138; Doc. No. 26, PageID# 115, ¶¶ 30–31.) Even assuming she had this additional supervisory experience, William Wade, who made the hiring decision for the quality coordinator position, did not know Pipkins served as acting coordinator, (Doc. No. 27-4, PageID# 288–89, ¶¶ 3, 5), and it cannot therefore be the basis of Pipkins's showing of pretext. *See Jackson*, 814 F.3d at 779.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge RECOMMENDS that Defendant's Motion for Summary Judgment (Doc. No. 24) be GRANTED.

Any party has fourteen (14) days after being served with this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days after being served with a copy thereof in which to file any responses to said objections. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of the matters disposed of therein. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

Entered this 10th day of August, 2017.

ALISTAIR E. NEWBERN
United States Magistrate Judge